**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

State of Minnesota, by its Attorney General Lori Swanson,

Plaintiff,

v.

Accretive Health, Inc.,

Defendant.

Civil File No. 12-145 RHK/JJK

**AFFIDAVIT OF LYNN FULLER**

Lynn Fuller, being first duly sworn on oath, states as follows:

1. My name is Lynn Fuller. My husband, Tom, and I live in New Brighton. We have three children, ages 29, 25, and 16, and we have a lot of family in the area. I work for a hotel in Brooklyn Park. I work in events, and supervise banquets and other events taking place in the hotel. My employer has been very flexible as I have helped Tom with his medical issues.

2. After having many tests and seeing many doctors, Tom was diagnosed with idiopathic pulmonary fibrosis, or IPF. IPF is a scarring or thickening of the lungs without a known cause. IPF causes the lungs to become scarred and stiffen, making it increasingly difficult to breathe. There is no known cure for IPF. Tom's diagnosis has been very difficult on Tom, me, and the rest of our family. Due to the generosity of friends and co-workers, we have been able to raise money in order to pay expensive medical bills we have received since 2008.

3. I have handled almost all of Tom's financial matters related to his treatment, so that he can focus on his health. I have had many conversations with hospitals and insurance companies in order to make our payments.

4. Tom had a lung transplant on January 14, 2011, and had a very difficult year after the transplant. He had many appointments, procedures, and hospital stays, and I missed a lot of work to be with Tom. At one point, Tom was so sick with side effects from his anti-rejection medications that he could not eat for almost three months. Tom's only nutrition was through a feeding tube.

5. On November 22, 2011, Tom and I went to the University of Minnesota Medical Center – Fairview in order to have Tom's feeding tube replaced with a temporary tube. On that day, Tom was very weak and could barely stand. He needed a cane to help him walk. When Tom and I arrived at the hospital for the procedure, we walked up to the front desk to check in, like we had before. This time, though, Tom was told by the front desk worker that he would be checked in around the corner in a different room. I asked if I should come with Tom. The worker told me: No, Tom would be fine. Tom was taken around the corner. I stayed in the waiting room.

6. When Tom came back to the waiting room, he was extremely upset. He was shaking. He gave me a piece of paper. The piece of paper he gave me is attached as Exhibit A. Tom told me that the hospital worker put a name and telephone number for us to call about payment. I walked into the hallway and called Ross with Accretive at (612) 672-4685. I learned that they were trying to collect money from my husband, in his sick and weak condition, for amounts that we did not owe and for "bills" that we had never

seen. We had already paid the $150 charge on the piece of paper, and other entries were for labs that had not yet been billed.

7.   Because this incident was so upsetting, Tom and I complained to Fairview. Attached as Exhibit B is a letter we received from Fairview dated December 2, 2011, sent in response to our complaint about the collection tactics used on the day of Tom's procedure.

8.   Over the course of Tom's treatment, we paid a lot of bills in full, and we also set up payment plans and were current with our payment plans. After Tom's procedure, we got collection calls that were upsetting. I asked the callers not to speak about these issues with Tom, as they really upset him while he was trying to get better. During one call, Tom told me that he was asked to give his credit card to the caller. Tom told that person that I handled payment issues, so they would have to talk with me. I understand from a later call that the collector recorded that, based on this conversation, Tom had "refused" a payment plan. We never refused a payment plan, and our history shows that we paid according to our plans. When I spoke with the collectors, at the end of many of these calls, I was told that a manager would give me a call back so that we could make sure that the collectors understood our payment plans, to look into the $150 charge, and to ensure that we would stop getting collection calls. I never got a call back from a manager, and the collection calls continued. These collection calls made me cry. We paid a large amount of money for Tom's care, and followed through on the payment plans we had. We just wanted to pay our bills according to our payment plans, and be

left alone. Our experience with the collections side was so different than the great care that Tom was given by his doctors and medical staff. I hope these practices change.

Lynn Fuller
LYNN FULLER

Subscribed and sworn to before me this 21 day of May, 2012.

June M Walsh
Notary Public

JUNE M. WALSH
NOTARY PUBLIC MINNESOTA
MY COMMISSION
EXPIRES JAN. 31 2014

Patient Information
John Fuller (MR: [redacted])
1501 17th Ave Nw, New Brighton, MN55112-5550

Guarantor Information
John Fuller
1501 17th Ave Nw, New Brighton, MN55112-5550

Payment Entry | Payment History

## Payment Entry

Refer to FC

| Patient | Type | AR Number | Service Date | Amount Due | Payment Amount | Notes |
|---|---|---|---|---|---|---|
| John Fuller (MR: [redacted]) 1501 17th Ave Nw, New Brighton, MN 55112-5550 | | | | | Print Statement | |
| | Current | 65521201 | 02/14/2012 | $ 0.00 | $ 0.00 | |
| | Current | 11000650074 | 02/14/2012 | $ 0.00 | $ 0.00 | |
| | Current | 11000737604 | 01/23/2012 | $ 0.00 | $ 0.00 | |
| | Current | 66896166 | 01/23/2012 | $ 0.00 | $ 0.00 | |
| | Current | 66474080 | 01/23/2012 | $ 0.00 | $ 0.00 | |
| | Current | 65975287 | 12/22/2011 | $ 0.00 | $ 0.00 | |
| | Current | 11000692370 | 12/22/2011 | $ 0.00 | $ 0.00 | |
| | Current | 66697129 | 12/19/2011 | $ 0.00 | $ 0.00 | |
| | Current | 11000768958 | 11/22/2011 | $ 0.00 | $ 0.00 | |
| | Current | 65898995 | 11/21/2011 | $ 0.00 | $ 0.00 | |
| | Prior | 11000231368 | 05/14/2011 | $ 150.00 | $ 0.00 | |
| | Prior | 11000232668 | 05/19/2011 | $ 34.91 | $ 0.00 | |
| | Prior | 11000206596 | 05/23/2011 | $ 91.71 | $ 0.00 | |
| | Prior | 11000255910 | 06/06/2011 | $ 92.66 | $ 0.00 | |
| | Prior | 11000332016 | 06/23/2011 | $ 97.34 | $ 0.00 | |
| | Prior | 20008626388 | 09/19/2011 | $ 25.00 | $ 0.00 | |
| | Prior | 20008653491 | 09/27/2011 | $ 25.00 | $ 0.00 | |
| | Prior | 20008672612 | 10/03/2011 | $ 19.69 | $ 0.00 | |
| | Prior | 20008720745 | 10/17/2011 | $ 25.00 | $ 0.00 | |

B379 PD LABS NB LABS NB LABS LABS

Add Physician Transaction

Add Hospital Transaction

**Total Due:** $ 561.31
**Total Payment:** $ 0.00
**Form of Payment:** Please select . . .

< Select Patient

Collect Payment >

Ross
612-672-4685
<Acc retire>

Spoke to 11-22-11

EXHIBIT A

UNIVERSITY OF MINNESOTA
MEDICAL CENTER
FAIRVIEW

**Riverside Campus**
2450 Riverside Avenue
Minneapolis, MN 55454
Tel 612-672-6000

**University Campus**
420 Delaware Street Southeast
Minneapolis, MN 55455
Tel 612-273-3000

December 2, 2011

Mr. John Fuller
1501 17th Ave. NW
New Brighton, MN 55112-5550

Dear Mr. and Mrs. Fuller,

Thank you for letting me know about your unpleasant experience in radiology at the University of Minnesota Medical Center, Fairview. You indicated that you were taken to a separate room to discuss outstanding bills before a procedure to replace a gastrostomy tube. You indicated that this was a very upsetting conversation and not welcome prior to a procedure.

I spoke to the manager of billing about your concern. Apparently this is a fairly new thing, recommended by a consultant working with them to reduce the numbers of outstanding bills. She was very sorry to hear about your experience and asked me to write it up so she can use it to document problems with this new policy. I hope that if they decide to continue to talk to people before procedures that they are more selective, only talking to people who are really in big trouble, and do not bother long time patients who are keeping their payment arrangements. Also, I recommended that they have a serious discussion about training anyone who would have such a conversation so that it is not alarming or threatening.

I am sorry that you had this experience. It is my understanding that you would not have been denied service, but the practice is in review.

Sincerely,

Joellen Johnson, Patient Relations

EXHIBIT B