UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

State of Minnesota, by its
Attorney General Lori Swanson,

Civil File No. 12-145 RHK/JJK

Plaintiff,

v.

**AFFIDAVIT OF MARCIA NEWTON**

Accretive Health, Inc.,

Defendant.

Marcia Newton, being first duly sworn on oath, state as follows:

1. My name is Marcia Newton. I am 45 years old and live in Corcoran, Minnesota with my husband Randy and our two sons, Ty and Maxx. I was born and raised in Milwaukee, Wisconsin. In 1988, I graduated from the University of Oshkosh with a degree in accounting. In 1992, I became a Certified Public Accountant and worked first at an accounting firm and later as an auditor for First Interstate Bank. In 1997, I received a Masters of Business Administration from the University of Wisconsin-Milwaukee. In 2001, I became the director of accounting for the Laureate Group, an organization that provides independent living, assisted living, and specialized dementia care to the elderly in Wisconsin. As director of accounting, I helped set up the Laureate Group's billing system. In 2004, Randy and I moved to Minnesota. I became the director of accounting and administration for Neighborhood Health Care Network, an organization that helps uninsured and underinsured Minnesotans find health care

resources such as Medical Assistance and other programs. In 2007, Randy took a job-transfer to Switzerland. I went with him and worked as an independent financial consultant for Elder Care Partners, an organization that provides resources and case management services to caregivers of elderly persons. Due to my career experience, I am knowledgeable about how billing works in the health care industry.

2. While we were in Switzerland, Randy and I decided to adopt two biological brothers, Ty and Maxx, from an orphanage (called a "baby-house") in Kazakhstan. At the time, Ty was 3 years old and Maxx was approximately 9 months old. The adoption was a long process. From December 2009 through April 2011, I spent approximately 8 months in Kazakhstan. After numerous court hearings and appeals, we were allowed to take Ty and Maxx out of the baby-house on March 23, 2011. In early April the adoption was finalized and I flew back to Minnesota with Ty and Maxx. Ty is now 5 years old and Maxx is 4 years old.

3. When we returned to Minnesota, Ty and Maxx had a lot of blood work tests performed on them to determine their health and the status of their immunizations. In approximately late September 2011, I took Ty and Maxx to have a hearing test at the Lions Children's Hearing and ENT Clinic, which is part of Fairview's University of Minnesota Amplatz Children's Hospital in Minneapolis. Maxx was not hearing well and the doctor prescribed antibiotics for a possible ear infection. I brought Maxx in for a second hearing test to see if the antibiotics had helped, but his hearing was even worse. On November 8, 2011, Maxx had a third hearing test at the clinic and his doctor

recommended that he have ear tube surgery so he could hear better and avoid rupturing an ear drum.

4.     I scheduled Maxx's ear tube surgery for November 30, 2011, with the doctor. After I scheduled the surgery and the doctor had left, a woman from Fairview's financial office came into the room and told me that it was Fairview's policy that I would have to pay up-front for the amount the surgery cost, after my insurance was applied. The woman asked for my insurance card, which I gave her. She then left the room. A little later, the woman returned, gave me back my insurance card, and told me that someone would be calling me about the amount I would owe for Maxx's surgery.

5.     The week of November 14, 2011, a woman from Fairview called me and told me that Maxx's surgery was going to cost $9,614.76, of which I would owe $875.90 after my insurance was applied. The woman asked me if I wanted to pay over the phone. I told her no. The woman sounded aggravated that I would not pay, asked me how I planned to pay for the surgery, and told me that I would have to pay the $875.90 when I arrived at the hospital. I was irritated that I was being asked to pay a large amount of money before Maxx's surgery was even performed and before ever seeing a bill. I told the woman that I wanted to see a bill on the day of the surgery as well as receive a receipt for paying up-front.

6.     On November 30, 2011, I took Maxx to Fairview's University of Minnesota Amplatz Children's Hospital in Minneapolis for his ear tube surgery. I checked in at the surgery floor desk and almost immediately was handed a bill for $875.90 for Maxx's surgery. I attach a copy of the bill I was handed as Exhibit 1. I felt

the clear implication was that if I refused to pay up-front, Maxx would not be permitted to have the surgery he needed. I decided to put the bill on my credit card and handed the front-desk registrar my credit card. The person ran my credit card and gave me a receipt. I attach a copy of the receipt as Exhibit 2. Maxx then successfully had the ear tube surgery and we went home.

7. Three or four weeks after Maxx's surgery, I received from my insurer, Bluecross/Blueshield of New Jersey, the Explanation of Benefits ("EOB") for the surgery. The EOB showed that Maxx's surgery only cost $4,267.40, which is less than half of the $9,614.76 that Fairview told me the surgery would cost. The EOB also showed that after my insurance was applied I only owed $200.26, not the $875.90 that I had paid Fairview up-front for the surgery. I attach a copy of the EOB for Maxx's surgery as Exhibit 3. I called Bluecross/Blueshield to confirm that my EOB was accurate. The representative I talked to said my EOB was accurate and that it violated the contract between Bluecross/Blueshield and Fairview for Fairview to charge me in advance for Maxx's surgery.

8. On January 18, I called Fairview's business office and requested a refund of $675.64, the amount I had over paid. The woman I spoke with told me I still owed Fairview additional money. I then requested an accounting of what I owed Fairview. On January 20, I received statements from Fairview regarding the cost of Maxx's surgery and other services. I learned that my November 30th credit card payment of $875.90 had not been applied to Maxx's surgery and was being held to pay for other services my family received from Fairview after November 30, 2011. I was never told this up-front

payment would be used for such purposes. On January 25, the $875.90 I paid on my credit card up-front for Maxx's surgery was applied to outstanding balances for unrelated services that occurred after the surgery and for which I had not yet even received a bill.

9. On January 20 [plw], I called Fairview's business office again, seeking a refund. The woman I talked to was rude, tried to intimidate me by telling me I didn't understand how health care billing works, and told me Fairview has the right to hold onto my over-payment to pay for future services. I told her I do understand the health care billing process and continued to ask for a refund. The woman still refused to give me a refund. I was upset after this call and I wrote a letter to Fairview, my insurer, and the Attorney General's Office expressing my concerns with Fairview's up-front collection and refund practices. I attach a copy of the complaint form and letter I sent to the Attorney General's Office as Exhibit 4.

10. In early February 2012, I received a bill from Fairview for a doctor visit. Instead of paying the bill, I called Fairview's business office and asked that the money I over-paid for Maxx's surgery be used to pay this bill. The person I spoke to agreed to this. I then again asked for a refund of the remaining amount I had overpaid. The person told me she could request that I receive a refund check. Finally, on February 10, 2012, I received a refund check from Fairview in the amount of $218.07.

11. After the Attorney General's Office filed a lawsuit against Accretive Health, Inc. and my experience with Accretive's collection practices was reported in the media, on May 2, 2012, Accretive sent me a short letter apologizing for the way I was treated and stated that "a mistake may have been made." I attach a copy of Accretive's

May 2, 2012 letter as Exhibit 5. At the time I was first asked for money up-front for Maxx's surgery I was told this was Fairview's "policy." I believe that what happened to me was not a "mistake" but an aggressive collection strategy Accretive implemented at Fairview affiliated locations to increase Fairview's revenues at the expense of patients like me.

12. I am angry that I was required to pay up-front more than four times the amount I actually owed for Maxx's surgery. I am even more upset that I had to call numerous times and argue with Fairview to get back the money that I over paid. These practices are especially troubling to me because someone who is not as financially savvy or versed in health care billing practices as I am may not have realized that they had even overpaid Fairview. I want these practices to stop so that Minnesota citizens only have to pay what they truly owe for their health care and don't have to struggle to get back money that is theirs in the first place.

MARCIA NEWTON

Subscribed and sworn to before me this 24th day of May, 2012.

Notary Public

AG: #3013566-v1



MARY ANNE GILES
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2015

# ⊞ FAIRVIEW

**Insurance**
Insurance: BCBS
Subscriber#: ▉▉▉▉▉▉
Group: ▉▉▉▉

**Secondary**
Insurance: None
Subscriber#:
Group:

**Patient Name**
MAXX NEWTON

**Guarantor**
RANDALL NEWTON

**Date of Service**
11/30/2011

## Patient Portion

| | | | |
|---|---|---|---|
| Copay: | $0.00 | Medical Services: | *Medical Services Rendered* |
| Co-Insurance: | 20% | Total Estimated Charges: | $9,614.76 |
| Deductible Remaining: | $0.00 | Insurance Payments and Adjustments: | $8,738.86 |
| Out of Pocket Max: | $2,757.53 | Estimated Due: | $875.90 |

The **estimate** provided above is not a complete statement of charges and may not reflect your total liability for the services you receive. This **estimate** is for current services and may not reflect additional services, physician charges, anesthesiology charges, pathology charges, or medical supplies provided during the course of your treatment. Portions of this **estimate** are based upon information regarding your benefits as reported by your health insurance provider. For account inquiries please call: **888-702-4073**.

In addition, you will be billed separately for physician services such as the Emergency Room physician, radiologist, consultant or physicians involved in your care.



# ⊞ FAIRVIEW

**If Paying By Credit Card, Please Fill Out Below:**
☐ VISA  ☐ MasterCard  ☐ ▉▉▉  ☐ ▉▉▉
Card Number: ____  V-Code: ____
Print Name: ____  Amt. Paid: ____
Signature: ____  Exp. Date: ____

| Due Date | Amount Due | Account # |
|---|---|---|
| Upon Receipt | $875.90 | ▉▉▉▉ |

**ADDRESSEE:**
MAXX NEWTON
▉▉▉▉▉

**MAKE CHECKS PAYABLE AND REMIT TO:**
FAIRVIEW HEALTH SERVICES
PO BOX 147
MINNEAPOLIS, MN - 55440-0147

EXHIBIT 1

Page Printing    Page 1 of 1

# ⊞ FAIRVIEW

### Patient Payment Receipt

**Terminal Operator:** Operator #373
**Transaction Date:** Nov 30 2011 11:33AM
**Batch #:** 90611

#### Payment Information

##### Charges

| Patient | AR Number | Date of Service | Service Code | Amount Due | Payment |
|---|---|---|---|---|---|
| Maxx Newton (MR: ██████) | | | | | |
| | ██████ | 11/30/2011 | URPERI | $ 875.90 | $ 875.90 |

**Total Paid:** $ 875.90

**Payment Method:** ██
**Card Number:** **** **** **** ████
**Cardholder's Name:** MARCIA NEWTON
**Authorization Code:** ██

Signature:

EXHIBIT 2

https://hp24prod.fairview.org/healthpay24/PrintHandle.asp?sFrameName=&PrintCopies=1   11/30/2011

https://services2.horizon-bcbsnj.com/eobweb/ODMFPortalsBri...



Provider Directory | News Room | About Us | Horizon Links | Site Map | Careers | Community Involvement

*Making Healthcare Work*

RANDALL J NEWTON

EOB SUMMARY    A/R'S    LATE PAYMENT    MESSAGE CODE EXPLANATION

**Subscriber Information:**
Subscriber ID
Group Number
Address
RANDALL J NEWTON

**DETAILS**
CLAIM # :
CLAIM # :

| DATE OF SERVICE | PROVIDER TYPE OF SERVICE | BILLED AMOUNT | ALLOWED AMOUNT | YOUR COINS /COPAY AMOUNT | YOUR DEDUCT AMOUNT | OTHER CARR AMOUNT | NOT COV AMOUNT | MESSAGE CODE | HORIZON PAID AMOUNT | SUBS RESP AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/30/2011 | U MN MED CTR FAIRV SPECIALTY ROOM | $1,980.00 | $464.59 | $92.92 | $0.00 | $0.00 | $0.00 | Z338 | $371.67 | $92.92 |
| 11/30/2011 | U MN MED CTR FAIRV SPECIALTY ROOM | $1,356.00 | $318.19 | $63.64 | $0.00 | $0.00 | $0.00 | Z338 | $254.55 | $63.64 |
| 11/30/2011 | U MN MED CTR FAIRV SERVICES/SUPPLIES | $645.00 | $151.34 | $30.27 | $0.00 | $0.00 | $0.00 | Z338 | $121.07 | $30.27 |
| 11/30/2011 | U MN MED CTR FAIRV SERVICES/SUPPLIES | $125.18 | $29.37 | $5.87 | $0.00 | $0.00 | $0.00 | Z338 | $23.50 | $5.87 |
| 11/30/2011 | U MN MED CTR FAIRV SERVICES/SUPPLIES | $56.12 | $13.17 | $2.63 | $0.00 | $0.00 | $0.00 | Z338 | $10.54 | $2.63 |
| 11/30/2011 | U MN MED CTR FAIRV SERVICES/SUPPLIES | $52.89 | $12.41 | $2.48 | $0.00 | $0.00 | $0.00 | Z338 | $9.93 | $2.48 |
| 11/30/2011 | U MN MED CTR FAIRV SERVICES/SUPPLIES | $52.21 | $12.25 | $2.45 | $0.00 | $0.00 | $0.00 | Z338 | $9.80 | $2.45 |

**Payment Summary:**
Horizon Paid Amount: $1,240.93
Subscriber Responsibility: $310.24

**Contact Horizon:**
Customer Service
1-800-355-2583
MO-TU-WE-FR 8AM-6PM
THUR 9AM-6PM
VISIT
WWW.HORIZONBLUE.COM

| TOTAL BILLED AMOUNT | ALLOWED AMOUNT | YOUR COINS /COPAY AMOUNT | YOUR DEDUCT AMOUNT | OTHER CARR AMOUNT | NOT COV AMOUNT | MESSAGE CODE | HORIZON PAID AMOUNT | SUBS RESP AMOUNT |
|---|---|---|---|---|---|---|---|---|
| $4,267.40 | $1,001.32 | $200.26 | $0.00 | $0.00 | $0.00 | Z084b Z040 Z028 V001 | $801.06 | $200.26 |

| MESSAGE CODE | EXPLANATION |
|---|---|
| Z028 | IF YOU ARE COVERED BY MORE THAN ONE HEALTH PLAN, YOU OR YOUR PROVIDER SHOULD FILE ALL YOUR CLAIMS WITH EACH PLAN. YOU SHOULD ALSO GIVE EACH PLAN INFORMATION REGARDING THE OTHER PLANS UNDER WHICH YOU ARE COVERED. |
| Z084b | YOUR TOTAL COST SHARE FOR THIS CLAIM IS $200.2. THIS INCLUDES ANY DEDUCTIBLES, COINSURANCE, COPAYS AND ANY OTHER AMOUNTS NOT COVERED BY YOUR HEALTH PLAN. |
| Z338 | THANK YOU FOR USING A NETWORK PROVIDER. THIS PROVIDER HAS AGREED TO ACCEPT THE ALLOWED AMOUNT AS PAYMENT IN FULL FOR THIS SERVICE. |
| Z040 | DUE TO RECENT SOCIAL SECURITY NUMBER IDENTITY THEFT STATE LEGISLATION, THE CONTRACT NUMBER REFERENCED ON THIS DOCUMENT MAY NOT BE THE SAME NUMBER THAT APPEARS ON YOUR IDENTIFICATION CARD. |
| V001 | FOR COVERAGE DECISION REVIEWS, SEND A LETTER INCLUDING: NAME AND ADDRESS OF PATIENT AND CUSTOMER; PROVIDER OF SERVICE; CLAIM #; CUSTOMER ID #; DATE OF SERVICE; AND REASON FOR REVIEW. FILE THE REQUEST WITHIN ONE YEAR OF RECEIPT OF THIS EOB. SEND GENERAL CLAIMS TO: HORIZON BCBSNJ, APPEALS COORDINATOR, P.O. BOX 317, NEWARK, NJ 07101. FOR MENTAL HEALTH, ALCOHOL/SUBSTANCE ABUSE CLAIMS: MAGELLAN BEHAVIORAL HEALTH SERVICES, APPEAL COORDINATOR, 199 POMEROY RD., 3RD FL., PARSIPPANY, NJ 07054. YOU MAY SUBMIT DOCUMENTS OR OTHER INFORMATION TO SUPPORT YOUR REQUEST. WE WILL NOTIFY YOU WITHIN 30 DAYS OF RECEIPT OF YOUR REQUEST. FOR COVERAGE DECISIONS BASED ON UTILIZATION MANAGEMENT GUIDELINES, NOTIFICATION WILL BE NO LATER THAN 5 DAYS FROM THE DATE WE RECEIVE YOUR REQUEST. CLAIMANTS OF SELF-INSURED PLANS WILL BE NOTIFIED WITHIN 60 DAYS OF RECEIPT OF THE |

EXHIBIT 3

https://services2.horizon-bcbsnj.com/eobweb/ODMFPortalsBri...

REQUEST,CLAIMANTS OF ERISA GROUPS STILL NOT SATISFIED AFTER EXHAUSTING THIS AND NOT MORE THAN ONE OTHER LEVEL OF APPEAL MAY BRING A CIVIL ACTION UNDER SECTION 502 (A) OF ERISA YOU MAY OBTAIN A COPY OF ANY RULE, GUIDELINE,CONTRACT LIMITATION , OR EXPLANATION OF CLINICAL AND/OR SCIENTIFIC JUDGEMENT RELIED UPON IN OUR DECISION-MAKING PROCESS. MEMBERS PURSUING REVIEWS WILL NOT BE SUBJECT TO DISENROLLMENT OF DISCRIMINATION OR PENALTY. FOR QUESTIONS, PLEASE CALL MEMBER SERVICES AT 1-800-355-BLUE.

CLAIM # : [redacted]



# Office of Minnesota Attorney General Lori Swanson
## Consumer Report Form

Suite 1400, 445 Minnesota Street
St. Paul, MN 55101

Phone: (651) 296-3353 or (800) 657-3787
TTY: (651) 297-7206 or (800) 366-4812

| | |
|---|---|
| **Your Name (Please Print)**<br>Marcia Newton | **Name of Company Complained About**<br>Fairview Health Services |
| **Your Address** | **Its Address**<br>2450 Riverside Avenue |
| **Your City, State, Zip** | **Its City, State, Zip**<br>Minneapolis, MN 55454 |
| **Your Day Phone** / **Your Evening Phone** | **Its Phone Number** |
| **Your Cell Phone** | **Its Contact Person** / **Title** |

The information you provide may be used in efforts to resolve the problem, to communicate with you, and/or to enforce applicable laws. The information may be shared with the party complained against, law enforcement agencies and consumer assistance agencies. You are not legally required to provide this information, but failure to do so may hinder efforts to resolve your problem.

**Have you contacted another agency?** Yes ☐ No ☑
If yes, give name of agency and result:

**Have you filed a lawsuit?** Yes ☐ No ☑
Result:

| Product/Service Involved | Date of Purchase | Amount of Purchase |
|---|---|---|
| Health Insurance | 11/30/2011 | $876 |

**What do you want the company to do?**

FHS unfairly charged me a deposit for my son's surgery and has improperly accounted for it. I would l like them to update my account and issue me the refund I am owed. I would like them to correct this

**Explanation of Problem:**

business practice as I am sure many individuals would not understand they are owed money and not re‑ceive correct refunds.

Please see the letter I sent to Fairview with details.

The information I have given you is true and accurate to the best of my knowledge and may be used as stated on this form.

Signature  Date 1/28/2012

Please call our office at (651) 296-3353 or (800) 657-3787 with any questions. Thank you for the opportunity to assist you.

Lori Swanson
Minnesota Attorney General

**EXHIBIT 4**

Marcia Newton

Fairview Health Services
Corporate Building
2450 Riverside Avenue
Minneapolis, MN 55454

January 28, 2012

I am seriously concerned about an ongoing experience I am having with Fairview. As a result of unacceptable business office conduct, copies of this letter are being provided to Blue Cross Blue Shield of New Jersey, and the Minnesota Attorney General's Office.

My son, Maxx Newton underwent ear tube surgery on November 30, 2011. At the time I scheduled the appointment, I was told by Fairview staff that it is Fairview's policy is to charge a 'prepayment' for hospital services. I later learned through a Blue Cross representative a prepayment was not required thus in violation of a contract between Blue Cross and Fairview. Having complied with the Fairview policy, I paid a deposit and are now unable to attain clear and concise accounting of the billings and credits related to the procedure.

The collection, accounting and refunding of residual deposits has not been conducted fairly. Because of this, I am bringing this issue to the Attorney General's office to protect other people from this practice.

Upon arrival at the hospital I was told the estimated cost of the procedure would be $9,615 and I was required to pay $876 before the procedure would take place. The receipt states this is for payment for hospital services for Maxx Newton.

After receiving the explanation of benefits, I learned the actual cost of the procedure was $4,267 (less than half of the estimate used to determine my deposit) and my responsibility was $200 not $876. This clearly demonstrates that estimates are inflated (possibly intentional) to require an excessive prepayment by patients.

I contacted Fairview's business office on January 18 and requested a refund for my overpayment and was told I still owed additional money. I had to request statement copies from the business office. When I received the statements, I learned that my November 30th payment has yet to be applied to Maxx's account and is being held to use against other services my family has received at Fairview in December 2011. The ability to use this deposit for other services/family members was never addressed in the documents presented to me on November 30th.

My family's accounts at Fairview have always been paid on a timely basis and I asked when I will receive a refund as the $876 deposit still is in excess of the amounts my family owes to Fairview for December services.

I was told the staff need to correct an erroneous claim they made to Blue Cross before they will work on issuing a refund to me. Fairview provided incorrect contract information to Blue Cross and is holding my family financially responsible for their billing errors.

This is unacceptable because I should never have been required to make a prepayment/deposit, nor should its excess been withheld by Fairview to cover other services. This only serves to enhance Fairview cashflow as staff correct billing errors.

Fairview has improperly taken money from me and its business office staff are unwilling to issue the refunds properly owed to me. I fear this practice of inflating deposits and not correctly refunding them is hurting people who do not have the business understanding of this unfair process.

Please respond to me at the address above.

Regards,

Marcia Newton



Joe Politi
Accretive Health, Inc.
401 N. Michigan Ave., Suite 2700
Chicago, IL 60611

May 2, 2012

Marcia Newton

Dear Ms. Newton,

Please allow me to express my sincerest apology for the registration experience you had prior to your son's surgery. Having read about the visit in the local news media, I wanted to reach out to let you know we would very much appreciate the opportunity to address and resolve the issue. Although a mistake may have been made, please know that we are committed to demonstrating the utmost respect, dignity and concern for your wellbeing and comfort as a patient. If this did not happen in your experience, it would be directly against the core values, culture, and mission of both our company and the hospitals we serve.

As we strive to learn from our mistakes and constantly improve the quality of care and patient experience, we are eager to receive direct feedback from those whose care we have impacted. If you would like to speak with us regarding your concerns about your experience, we would be more than receptive – in fact, we would be grateful.

Should you be inclined and willing, please contact us at 312-324-7820, where we would be eager to better understand your experience. Please ask to speak with me personally. Thank you.

Warm Regards,

Joe Politi

Manager, Accretive Health Inc.

401 N Michigan Ave
Suite 2700
Chicago, IL 60611
312.324.7820

EXHIBIT 5